

The following constitutes the order of the court.
Signed September 15, 2015

_____
**William J. Lafferty, III**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|                                    |                          |
|------------------------------------|--------------------------|
| In re                              |                          |
|                                    | No. 12-46834             |
| Jorge Edgard Quinones,             |                          |
| Lidia Delvalle Quinones,           | Chapter 11               |
|                                    |                          |
|         Debtors. |  |
|_____|                          |
| The Board of Trustees, in          |                          |
| their capacities as Trustees       |                          |
| of the Laborers Health and         |                          |
| Welfare Trust Fund for             |                          |
| Northern California, et al.        |                          |
|                                    |                          |
|     Plaintiffs, | Adv. Pro. No. 13-04015  |
|                                    |                          |
|     v.          |                          |
|                                    |                          |
| Jorge Edgard Quinones,             |                          |
| Lidia Delavalle Quinones,          |                          |
|                                    |                          |
|     Defendants. |                         |
|_____|                          |

1

**MEMORANDUM**

Defendant-Debtors', Jorge Edgard Quinones and Lidia Delavalle Quinones (Quinoneses), *Motion for Summary Adjudication* (*Motion*) came before the court for hearing on August 12, 2015.  David N. Chandler appeared on behalf of the Quinoneses.  Jolene Kramer appeared on behalf of Plaintiffs, the Board of Trustees (Board) of various employee benefit trust funds.[1]

The Board initiated an adversary proceeding against the Quinoneses seeking to except from discharge debts for unpaid contributions to the funds.  The payments were owed pursuant to an agreement entered into between Jorge and the various employee benefit trust funds. The *First Amended Complaint to Determine Certain Debt to be Nondischargeable* (*Complaint*) seeks to except the debt from discharge based on a number of provisions, including § 523(a)(2), (a)(4), and (a)(6). Specifically at issue in the present *Motion* is the Board's claim of nondischargeability under § 523(a)(4) for "defalcation

---

[1] The Board of Trustees filed this adversary proceeding in its capacity as trustee of the Laborers Health and Welfare Trust Fund for Northern California, the Laborers Vacation-Holiday Trust Fund for Northern California, the Laborers Pension Trust Fund for Northern California, and the Laborers Training and Retraining Trust Fund for Northern California.

2

while acting in a fiduciary capacity, embezzlement, or larceny."

On July 2, 2015, the Quinoneses filed a *Motion for Summary Adjudication*. On July 29, the Board filed an opposition to the Quinoneses' *Motion*. On July 30, the United States Court of Appeals for the Ninth Circuit issued an opinion in *Bos v. Board of Trustees*, 795 F.3d 1006 (9th Cir. 2015). On July 31, the court issued a *Memorandum Regarding Recent Ninth Circuit Decision*, which directed the parties to be prepared to discuss *Bos* at the August 12 hearing.

At the August 12 hearing the parties and the court engaged in a lengthy discussion of *Bos* and its impact on the Quinoneses' *Motion*. At the end of that hearing the court indicated that it was inclined to grant the *Motion* based on the Ninth Circuit's opinion in *Bos*. The court, however, took the matter under submission and reserved one issue, which was not specifically addressed in *Bos* nor in the Quinoneses' *Motion*, for further briefing. The limited issue reserved for further briefing was whether an employer is a fiduciary of an employee benefit plan with respect to unpaid employee contributions that have been withheld from the employees' paychecks by the employer for the purpose of facilitating transfer to the plans'

3

trust fund.[2]  The court afforded the Board two weeks to brief the issue.

On August 25, the Board filed a motion to voluntarily dismiss the *Complaint* in its entirety and a brief that addressed the treatment of employee withholdings. While the Board addressed the employee contribution issue in its supplemental brief, the principal relief sought in the supplemental brief was dismissal of the case in lieu of ruling on the Quinoneses' *Motion. See Plaintiffs' Supplemental Brief on Defendants' Motion for Summary Adjudication; Motion to Dismiss Adversary Proceeding*, doc. 130, at 11 (Aug. 25, 2015). Upon further reflection and review of the Quinoneses' *Motion* the court notes that the issue regarding contributions owing to the funds that could be categorized as withholdings from employee paychecks was not addressed by the *Motion*.  Although the court engaged in a substantial colloquy with the parties on

---

[2] In *Bos* the Ninth Circuit addressed a situation where an employer failed to make required monthly contributions, which accrued based on hours of work completed by employees covered by the agreement. 2015 WL 4568015, at *1. *Bos* did not address a situation where an employer fails to transfer to an employee benefit plan employee contributions that have been withheld from the employees' paycheck pursuant to a collective bargaining agreement. The Tenth Circuit recognized in *In re Luna*, which the Ninth Circuit cited approvingly in *Bos*, "that employers who fail to pay contractually-owed contributions to a plan are not, by virtue of that fact alone fiduciaries," while also indicating that employer contributions "must be distinguished from the situation where an employer has control over funds that were withheld from employees' paychecks." *See* 406 F.3d 1192, n. 13 (10th Cir. 2005).  The *Luna* court concluded that "[w]here the issue is not employer contributions, but rather employee contributions held by the employer, courts will recognize that the employer meets ERISA's statutory definition of fiduciary." *Id.*

4

the issue and reserved the issue for further briefing, the court has determined that it would be inappropriate to reach the issue because it was not directly addressed by the Quinoneses' *Motion,* the Board's opposition, nor in any other pleading with the primary purpose of seeking or opposing the entry of summary judgment.

Relying on the Ninth Circuit's opinion in *Bos*, the court finds that the Board's § 523(a)(4) claim arising from the unpaid employer contributions does not raise a genuine issue of material fact and the Quinoneses are entitled to judgment as a matter of law.

## I.   Factual Background[3]

Jorge was the sole proprietor of Professional Construction Services (PCS), an unincorporated construction business. Lidia was the office manager of PCS. Together, the Quinoneses managed PCS's affairs, controlled PCS's funds, and authorized PCS's expenditures, including approving and processing payroll. In carrying out these activities, Jorge reviewed and approved workers' timesheets and Lidia authorized third-party payroll companies to pay employees.

---

[3] Unless otherwise noted, the factual background is composed from uncontroverted facts contained in declarations, exhibits, interrogatories, requests for admissions, and other documents filed in support of and in opposition to the *Motion.*

5

Jorge, on behalf of PCS as an employer, became a signatory to a collective bargaining agreement (CBA) with the Northern California District Council of Laborers. The agreement incorporates by reference trust agreements with the employee benefit trust funds. By entering the CBA, Jorge promised to make contributions to the trust funds for each hour paid for or worked by his employees (employer contributions). The CBA also required employers, such as PCS, to withhold funds from employee paychecks, which were then to be paid to the Vacation-Holiday Trust Fund (employee contributions).[4]

Lidia was not a signatory to the CBA. Lidia acted as the office manager and was a signatory on all PCS accounts. In her role as office manager, Lidia authorized third party payroll companies to process payments to PCS employees. While Jorge reviewed the employees' timesheets, Lidia often approved and forwarded payroll requests to the third party payroll companies.

For a period of time prior to the filing of the bankruptcy case, the Quinoneses failed to make both the employer and

---

[4] At hearings on August 12 and September 2, the Quinoneses argued that this interpretation of the CBA, which was posited by the Board and supported by the declaration of Jennifer Peters, was inaccurate and did not reflect the actual practice of the Quinoneses and the trust funds. *See Declaration of Jennifer Peters in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Adjudication*, doc. 103, ¶ 9 (July 29, 2015). The Quinoneses, however, did not submit any evidence to support their interpretation of this provision of the CBA.

employee contributions to the trust funds. The *First Amended Complaint* claims approximately $183,875.63 in total unpaid contributions is excepted from discharge.[5]

## II. Discussion

### *A. Summary Judgment Standard*

Rule 56(a) of the Federal Rules of Civil Procedure, incorporated to adversary proceedings in the Bankruptcy Court by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant carries the burden of satisfying the Rule 56(a) standard.

A fact is material only if it "might affect the outcome" of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Id.*

Entry of summary judgment is warranted where a party "fails to make a showing sufficient to establish the existence

---

[5] The total contained in the *Complaint* appears to be the combined unpaid employer and employee contributions. This *Memorandum* resolves the Quinoneses' § 523(a)(4) claim as to the unpaid employer contributions, but does not resolve the claim as to the unpaid employee contributions. If either party seeks to have the court determine which portion of the total unpaid contributions constitutes employer contributions, the court will require further briefing from the parties on the issue.

7

of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553 (1986). Under such circumstances, the moving party is "entitled to judgment as a matter of law." *Id.*

Summary judgment may be appropriate due to the nonmoving party's failure to buttress allegations with adequate evidentiary support. *Id.* Summary judgment may also be entered where the nonmoving party has supported the allegations with uncontroverted evidence, but the moving party is nonetheless entitled to judgment as a matter of law. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The moving party is entitled to judgment as a matter of law where based on the uncontroverted evidence a reasonable trier of fact could not find in favor of the nonmoving party and there are no facts in dispute that could alter that outcome or, put another way, there are no genuine issues of material fact remaining. *See id.* ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

8

### B. Defalcation while acting in a fiduciary capacity

The initial issue presented by the Quinoneses *Motion* is whether an employer is a fiduciary of an employee benefit plan with respect to unpaid contributions where the plan expressly defines the employee benefit trust funds to include future payments.

Individual debtors in bankruptcy are generally entitled to discharge debts, 11 U.S.C. § 727(a), but an individual debtor in a chapter 7 case is not entitled to a discharge of any debt incurred due to the debtor's "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," 11 U.S.C. § 523(a)(4). A debt is nondischargeable under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity if "(1) an express trust existed, (2) the debt was caused by fraud or defalcation, and (3) the debtor acted as a fiduciary to the creditor at the time the debt was created." *In re Utnehmer*, 2013 WL 5573198, *5 (9th Cir. BAP 2013) (quoting *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1459 (9th Cir. 1997)).

A trust is "a fiduciary relationship with respect to property, subjecting the person by whom the title to property is held to equitable duties to deal with the property for the benefit of another person. . . ." *Restatement (Second) of Trusts* § 2 (1959). A requirement of "a trust relationship is a

trust res—money or property that is entrusted to the debtor-fiduciary." *In re Evans*, 161 B.R. 474, 478 (9th Cir. BAP 1993).

In order to establish an express trust the debtor must act as a fiduciary of the creditor and the fiduciary relationship must predate the fraud or defalcation. *See Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1190 (9th Cir. 2001). An individual is a fiduciary for purposes of § 523(a)(4) if the individual is a fiduciary under the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. No. 93-406, 88 Stat. 829. *See id.* ERISA defines a fiduciary as an individual who "exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its assets." 28 U.S.C. § 1002(21)(A)(I).

The Court of Appeals for the Ninth Circuit has held that unpaid contributions by employers to employee benefit funds are not considered assets of the plan, and therefore are not held in trust by the employer for purposes of § 523(a)(4). *See Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000). However, several district courts in the Ninth Circuit recognized an exception to the outcome in *Cline* "when the plan document expressly defines the fund to include future payments." *See Bos v. Board of Trustees*, 795 F.3d at 1009

10

(citing *Board of Trustees v. River View Constr.*, 2013 WL
2147418, at *6 (N.D. Cal. Apr. 17, 2013); and *Trustees of S.
Cal. Pipe Trades Health & Welfare Trust Fund v. Temecula Mech.,
Inc.*, 438 F. Supp. 2d 1156, 1165 (C.D. Cal. 2006)). Where the
plan document so expressly defines the fund to include unpaid
contributions, those courts found that unpaid contributions
were assets of the plan that were under the control of the
employer, thus establishing a fiduciary for purposes of §
523(a)(4). *See id.*

The Ninth Circuit's recent decision in *Bos v. Board of
Trustees* directly addressed the issue of whether an employer is
a fiduciary of an employee benefit plan with respect to unpaid
employer contributions where the trust agreements define the
plan to include future payments. 795 F.3d at 1009-11. The
Ninth Circuit overruled, in large part, the district court
opinions that relied on plan language to find that employers
exercised control over plan assets when they failed to pay
employer contributions. *See id* at 1011.

In *Bos*, the Ninth Circuit reemphasized "the limited
approach [the court takes] in recognizing fiduciary status,
particularly in the § 523(a)(4) context." *Id.* at 1011. The
Ninth Circuit did not directly address the question of whether

11

a plan document can convert an unpaid contribution into a plan asset. *Id.*

Instead, the court held that even if a plan "could convert an unpaid contribution into some type of plan asset," the control of a plan asset required to establish a fiduciary relationship under ERISA and § 523(a)(4) is absent. *Id.* Such an asset could be classified as a cause of action against the employer for breach of the agreement, in which case the employee benefit plan, and not the employer, maintains control over the asset. *See id.* In this scenario, "a typical employer never has sufficient control over a plan asset to make it a fiduciary for purposes of § 523(a)(4)." *Id.*

In the alternative, the asset may be classified as "the unpaid past-due contributions" or "amounts which the employer must eventually contribute to the plan, but which are not yet due." *Id.* at 1011-12. If the plan asset is the unpaid contributions or amounts that will become due, the fiduciary relationship does not predate the wrongdoing that gives rise to the debt, and therefore an express trust is not created for purposes of § 523(a)(4). *See id.*

The trust agreements, which were incorporated by reference to the CBA signed by Jorge, define the "trust funds" as "all [c]ontributions required by the [CBA] to be made for the

12

establishment and maintenance of the [p]lan." The trust agreements further define "contributions" as payments "made or to be made to the funds" by an employer. In opposition to the Quinoneses' *Motion* the Board relies on the exception to the general rule that unpaid employer contributions are not plan assets. *Cline*, 200 F.3d at 1234. The Board argues that by failing to make contributions required under the trust agreements, and instead putting funds that could have been paid to the plans to other uses, the Quinoneses exercised control over plan assets. Due to their exercise of control over plan assets, the Board posits that the Quinoneses are fiduciaries of the plans under ERISA.

*Bos* controls in this instance, and mandates a finding that the debt for unpaid employer contributions is not excepted from discharge under § 523(a)(4)'s defalcation provision. The Board contends here, as the plaintiff contended in *Bos*, that the trust agreements define the unpaid employer contributions as plan assets, the employer exercised control over those assets, and, thus, the employer acted as a fiduciary of the funds for purposes of § 523(a)(4). *Bos*, 795 F.3d at 1008-09. As noted above, the plan asset, if any, can be classified in a limited number of ways. *See id.* at 1010-11. Regardless of which classification is most accurate, the Quinoneses were not

13

fiduciaries of the employee benefit plans for purposes of §
523(a)(4), either because the plan asset at issue is a cause of
action over which the Quinoneses did not have control or
because the Quinoneses were not fiduciaries prior to the fraud
of defalcation. *Id.*

The Board cannot establish, as a matter of law, that the
Quinoneses were fiduciaries of the Board with respect to any
plan assets. The Board cannot prevail on its § 523(a)(4)
defalcation and fraud claim because it has failed to establish
that an express trust existed. The Quinoneses, therefore, have
established that there is no genuine issue of material fact and
that they are entitled to judgment as a matter of law with
regard to the Board's § 523(a)(4) defalcation and fraud claim
arising from the unpaid employer contributions.

### C. Embezzlement

Section 523(a)(4) excepts from discharge debts for
"embezzlement." Federal law controls the definition of
embezzlement for purposes of § 523(a)(4). *See In re Wada*, 210
B.R. 572, 575 (9th Cir. BAP 1997). Embezzlement is the
"fraudulent appropriation of property by a person to whom such
property has been entrusted or into whose hands it has lawfully
come." *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct.
294, 40 L.Ed. 422 (1895). In order to except a debt for

14

embezzlement from discharge the creditor must show: "(1) property rightfully in possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud." *In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991) (quoting *In re Hoffman*, 70 B.R. 155, 162 (Bankr. W.D. Ark. 1986)) (internal quotations omitted).

The Board argues that the Quinoneses possessed funds in which the employee benefit plans had an interest and that the Quinoneses misappropriated those funds, with knowledge of their obligations to the plans' trust funds, by using them to pay other obligations. The Quinoneses' *Motion* argues that the employee benefit plans did not have an interest in funds possessed by PCS and, therefore, there is no issue of material fact as to whether property of the employee benefit plans was in the possession of the Quinoneses.

For the reasons noted in greater detail above in connection with the fraud or defalcation claim, the unpaid employer contributions are not assets of the employee benefit plans. *Bos*, 795 F.3d at 1012. The Quinoneses did not, by holding funds that could have been used to make the employer contributions, possess an asset of the plans. *See id.* The Board cannot make a showing from which a reasonable trier of

15

fact could find that property of the plans was rightfully in the possession of a nonowner. Therefore, there is no genuine issue of material fact as to the first element of an embezzlement claim under § 523(a)(4) and the Quinoneses are entitled to judgment as a matter of law.

Further, even if the trust agreements did create a property interest that qualifies as a plan asset, the Quinoneses did not have "sufficient control over [the] plan asset to make it a fiduciary for purposes of § 523(a)(4)." *Id.* at 1011. While proving embezzlement does not always require a pre-existing fiduciary relationship, *In re Wada*, 210 B.R. at 576, where a debtor is not considered a fiduciary under § 523(a)(4)'s defalcation provision due to his lack of control over a plan asset, it follows that the same debtor would lack sufficient control and authority over a plan asset to misappropriate the plan's property for purposes of § 523(a)(4)'s embezzlement provision, *In re Littleton*, 942 F.2d at 555.

If the trust agreements here created a property interest that qualifies as a plan asset, whether that interest is properly classified as a cause of action against the Quinoneses for breach of the agreement or in some other way, that asset remained under the control of the employee benefit plans. The

16

Quinoneses did not have the degree of control over a plan asset that would be required for a reasonable trier of act to find that a nonowner of the asset appropriated it "to a use other than which it was entrusted." *In re Littleton*, 942 F.2d at 555. Therefore, there is no genuine issue of material fact as to the second element of an embezzlement claim under § 523(a)(4) and the Quinoneses are entitled to judgment as a matter of law. *See id.*

**D. Larceny**

Section 523(a)(4) excepts from discharge debts for "larceny." Bankruptcy courts look to the federal common law to define larceny for purposes of § 523(a)(4). *In re Ormsby*, 591 B.R. 1199, 1206 (9th Cir. 2010). Federal common law defines larceny as a "felonious taking of another's personal property with intent to convert it or deprive the owner of the same." *See id.* (quoting 4 *Collier on Bankruptcy* ¶ 523.10[2] (15th ed. rev. 2008)) (internal quotations omitted). "Larceny is distinguished from embezzlement in that the original taking of the property was unlawful." *In re Montes*, 177 B.R. 325, 332 (C.D. Cal. 1994).

The Board argues that the unpaid employer contributions are assets of the employee benefit plans and that by using funds in their possession, which could have been used to

17

satisfy their obligations to the trust funds, for other purposes, the Quinoneses unlawfully took property of the plans.

As noted above, funds possessed by the Quinoneses that could have been used to pay outstanding employer contributions to the employee benefit plans were not plan assets. *See Bos*, 795 F.3d at 1011-12. The Quinoneses did not possess or control a plan asset. The Quinoneses could not have unlawfully taken property of the employee benefit plans that they never possessed or controlled. Therefore, there is no genuine issue of material fact as to whether the Quinoneses unlawfully took property of the employee benefit plans. The Quinoneses are entitled to judgment as a matter of law on the Board's larceny claim under § 523(a)(4).

### III. Conclusion

As to the employer contributions, the Quinoneses have established the absence of a genuine issue of material fact with regard to the Boards § 523(a)(4) claim and they are entitled to judgment as a matter of law.

**End of Memorandum**

18

## <u>Court Service List</u>

Jolene Kramer
Emily P. Rich
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway #200
Alameda, CA 94501

David N. Chandler
Law Offices of David N. Chandler
1747 4th St.
Santa Rosa, CA 95404

Jorge Edgard Quinones
Lidia Delvalle Quinones
164 Belle Avenue
Pleasant Hill, CA 94523

19