Entered on Docket
December 19, 2015
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed December 18, 2015

_____
William J. Lafferty, III
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br>Jorge Edgard Quinones,<br>Lidia Delvalle Quinones,<br><br>          Debtors.<br>_____ | No. 12-46834<br><br>Chapter 7 |
| The Board of Trustees, in their capacities as Trustees of the Laborers Health and Welfare Trust Fund for Northern California, et al.<br><br>          Plaintiffs,<br><br>          v.<br><br>Jorge Edgard Quinones,<br>Lidia Delvalle Quinones,<br><br>          Defendants.<br>_____ | Adv. Pro. No. 13-04015 |
| The Board of Trustees, in their capacities as Trustees of the Cement Masons Health and Welfare Trust Fund for Northern California, et al.<br><br>          Plaintiffs,<br><br>          v.<br><br>Jorge Edgard Quinones,<br>Lidia Delvalle Quinones,<br><br>          Defendants.<br>_____ | Adv. Pro. No. 13-04016 |

# MEMORANDUM REGARDING DEFENDANTS' COUNTER MOTIONS FOR SANCTIONS

## I. Introduction and Procedural History

Plaintiffs, the Boards of Trustees ("Laborers Board" or "Cement Masons Board", collectively, the "Boards") of various employee benefit trust funds (the "Laborers Trust Funds" or the "Cement Masons Trust Funds")[1] filed the above-captioned adversary proceedings against Defendants-Debtors, Jorge and Lidia Quinones ("Jorge" or "Lidia" or "the Quinoneses", as the context may require) to have certain debts declared nondischargeable pursuant to § 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code[2]. Prior to trial, the Boards filed in each adversary proceeding a *Motion to Dismiss Adversary Proceeding* (collectively, the "*Motions to Dismiss*") pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7041, which incorporates Federal Rule of Civil Procedure ("FRCP") 41. In response, the Quinoneses filed a *Counter Motion for Order Determining Prevailing Party* (collectively, the "*Counter Motions Re Prevailing Party*") in each adversary proceeding (individually, the "Laborers AP" or the "Cement Masons AP", collectively, the "APs"). The Court is determining the *Motions to Dismiss* and the *Counter Motions Re Prevailing Party* in a *Memorandum of Decision Regarding Plaintiffs' Motions to Dismiss Adversary Proceedings and Defendants' Counter Motions for Orders Determining Prevailing Party* ("*Memorandum of Decision*") issued concurrently herewith.

The Quinoneses also filed a *Counter Motion for Sanctions* pursuant to FRBP 9011 (collectively, "*Sanctions Motions*") in each of the APs. The Quinoneses requested the Court award sanctions against the Boards for pursuing the § 523(a)(2)(A), (a)(4), and (a)(6) claims against them despite allegedly having no factual basis for doing so. The Boards opposed on the

---

[1] The Boards of Trustees filed these adversary proceedings in their capacity as Trustees of the Laborers Health and Welfare Trust Fund for Northern California, the Laborers Vacation-Holiday Trust Fund for Northern California, the Laborers Pension Trust Fund for Northern California, the Laborers Training and Retraining Trust Fund for Northern California, the Cement Masons Health and Welfare Trust Fund for Northern California, the Laborers Vacation-Holiday Trust Fund for Northern California, the Cement Masons Pension Trust Fund for Northern California, and the Cement Masons Apprenticeship and Training Trust Fund for Northern California.

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

1

procedural grounds that the Quinoneses neither properly served nor timely brought the *Sanctions Motions*. As well, the Boards opposed the *Sanctions Motions* on the merits, claiming that they had good faith bases for pursuing the § 523 claims, and that the Quinoneses only prevailed on the § 523(a)(4) claims because of a change in controlling case law.

The Court heard argument on the *Motions to Dismiss*, the *Counter Motions Re Prevailing Party*, and the *Sanctions Motions* on October 19, 2015, and took the matters under submission at the conclusion of the hearing. For the reasons set forth below, the Court determines that it should deny the *Sanctions Motions*.

## II. Background

The Court sets forth the complex procedural history and the basic facts of these matters at some length in the *Memorandum of Decision* entered concurrently herewith. For the sake of brevity and efficiency, that entire background need not be repeated here. Rather, the Court will incorporate that history into this Memorandum, and will set forth solely those facts and that procedural history necessary to determine the *Sanctions Motions*.[3]

**A. The Complaints and Various Motions to Dismiss**

In particular, the Court incorporates from the *Memorandum of Decision* the descriptions of the contents and the allegations contained in the Boards' *Initial Complaints* and the *First Amended Complaints*, and adds the following details:

- Each of the Trust Agreements states that the trust fund "shall consist of all Contributions required by the Collective Bargaining Agreements to be made for the establishment and maintenance of the Plan, and all interest, income and other returns thereon of any kind whatsoever, and any other property received or held by reason of or pursuant to this trust." *Id.* at ¶ 10.
- In order, *inter alia*, to permit the Boards to update their complaints with information gleaned via discovery, the Court directed the Boards to file motions to amend complaints in each of the APs, with the proposed form of the amended complaint attached. On

---

[3] To further advance the goal of judicial efficiency, the Court will adopt and use herein all terms defined in the *Memorandum of Decision*.

2

January 1, 2014, the Boards filed a *Motion to Amend Complaint* (together, the "*Motions to Amend Complaint*") in each of the APs.

The Quinoneses timely opposed the *Motions to Amend Complaints* in each of the APs, arguing that many of the allegations and assertions in the proposed amended complaints were time barred and did not relate back to the *Initial Complaints*. In the Cement Masons AP, Lidia also filed a *Motion for Summary Judgment* ("*First Defendants' MSJ (Cement Masons)*") to be heard concurrently with the *Motions to Amend Complaint*. The basis for the *First Defendants' MSJ (Cement Masons)* was Lidia's declaration that, (a) as a non-signatory to the Master Agreement (only Jorge signed the Master Agreement on behalf of PCS) she had neither made any false representations to the Cement Masons Board, nor could she have any fiduciary duties to them; (b) nothing in her conduct with respect to PCS, which was limited to fairly low-level office administration tasks, resulted in her exercising any control over moneys to be paid to the trust funds, nor was there any other basis to ascribe control or dominion by her over assets that belonged to the trust funds or were to be paid to the trust funds; (c) nor did she have any willful and malicious intent to harm the trust funds or their property. *Motion for Summary Judgment* 2-4, 13-04016, Feb. 4, 2014, ECF No. 36.

After hearing argument on March 12, 2014 on the *Motions to Amend Complaint*, and the *First Defendants' MSJ (Cement Masons)* the Court: (a) granted the *Motions to Amend Complaints*, and (b) and denied the *First Defendants' MSJ (Cement Masons)*, on the grounds that discovery was ongoing in the matter and could lead to additional relevant information concerning Lidia's role in these disputes, and that the Quinoneses failed to carry their burden on summary judgment, the *First Defendants' MSJ (Cement Masons)* having been supported solely by Lidia's entirely conclusory declaration. The Court also ordered that the amended complaints be filed by April 11, 2014, and gave the Quinoneses until May 9, 2015 to file responses.

On April 11, 2014, the Boards timely filed an amended complaint in each of the APs (the "*First Amended Complaints*"). As a general matter, the *First Amended Complaints* added factual background concerning Lidia's activities in connection with various businesses owned

and operated by the Quinoneses, including her conduct in connection with the compilation and reporting of data related to the hours allegedly worked by covered employees for PCS.

The *First Amended Complaints* also included additional information and allegations concerning both Lidia and Jorge's alleged misuse of funds generated by the various businesses to pay expenses not related to those businesses, and other acts that constituted co-mingling of assets between and among the various businesses. That background provided additional support for the nondischargeability claims under § 523(a)(2), (4), and (6).[4]

The Quinoneses timely filed their *Motion to Dismiss the Amended Complaints* (collectively, the "*Motions to Dismiss the Amended Complaints*") arguing, despite the Court's granting of the *Motions to Amend Complaints*, that the *First Amended Complaints* contained new assertions that were time barred, and not subject to relation back. Simultaneously, Lidia filed a *Motion for Summary Judgment* in the Laborers AP ("*Second Defendants' MSJ (Laborers Trust)*") on all counts alleged in the *First Amended Complaint* in the Laborers AP, based upon the same general arguments that had been presented in the *First Defendants' MSJ (Cement Masons)*, which the Court had previously denied. The Boards opposed each of these motions, pointing out, among other grounds, that the *Motions to Dismiss the Amended Complaints* were based upon arguments that the Court had already rejected, and that were once again based solely on a non-probative, self-serving and conclusory declaration.

On July 28, 2014, the Court heard the *Motions to Dismiss Amended Complaints* and the *Second Defendants' MSJ (Laborers Trust)*. At the conclusion of the hearing, the Court denied the *Motions to Dismiss Amended Complaints,* provided however, that the Court directed that certain allegations based upon alleged post-petition activity be stricken from each of the *First Amended Complaints*. The Court also denied the *Second Defendants' MSJ (Laborers Trust)* without prejudice.

After further motion activity that need not be detailed here, the Court conducted a status conference in these APs on June 10, 2015 to consider pre-trial matters and to set a trial date. As

---

[4] In addition, the Boards added facts that they believed supported a claim of nondischargeability, pursuant to Section 523(a)(2), of the Quinoneses' withdrawal liability caused by PCS's cessation of business.

4

a result of the status conference, the Court set trial to commence on October 19, 2015, and assisted the parties in setting a judicially-supervised mediation of all issues. In addition, the Quinoneses informed the Court that they planned to file further motions requesting summary judgment limited to the claims for relief based on § 523(a)(4). The Court permitted the Quinoneses to file these motions, on the theory that it might help focus the discussion at the mediation for the Boards to be fully aware of the Quinoneses' arguments regarding the (a)(4) claims, but set the *Motions for Summary Adjudication* (the "*Quinoneses' MSAs*") for hearing on August 12, 2015, in order to permit the parties to focus initially on the mediation.

The judicially-supervised mediation was held on July 14, 2015 and did not result in a consensual resolution of these matters. On July 29, 2015, the Boards opposed the *Quinoneses' MSAs,* and filed other supporting documents. On July 30, 2015, the Boards filed *Motions for Summary Adjudication* on the § 523(a)(4) claims (the "*Boards' MSAs*").

**B. The Quinoneses' Numerous Threatened Motions Pursuant to FRBP 9011**

As will be discussed in greater detail below, FRBP 9011 requires that a party seeking relief under that rule provide a "safe harbor" notice to the party that has allegedly violated the rule. It is therefore appropriate to review in some detail the extensive history of the Quinoneses' threats to invoke FRBP 9011 against the Boards.

**1. Notice to the Laborers Trust**

On December 16, 2013, Lidia, by and through the Quinoneses' counsel, sent a letter to Byron C. Loney, Chairman of the Board of Trustees for the Laborers Trust Funds, along with a "file-ready" motion for sanctions (together, the "*Sanctions Notice*"). *See Counter Motion for Sanctions* 8, 13-04015, Sept. 23, 2015, ECF No. 142. The *Sanctions Notice* warned that the *Initial Complaint* was defective because it based Lidia's liability solely on the Boards' assertion, *on information and belief*, that Lidia was a "co-owner of PCS." Soon after receiving the *Sanctions Notice*, the Laborers Board wrote to the Quinoneses and explained that they intended to amend their *Initial Complaint* for the very purpose, among others, of expanding and clarifying the factual and legal bases for their assertions of liability against Lidia. The Quinoneses did not
5

serve another version of the sanctions motion included in the *Sanctions Notice* on the Laborers Board.

The current *Sanctions Motion* directed to the Laborers Board is markedly different from the one served on the Laborers Board in the *Sanctions Notice*. The *Sanctions Motion* asserts (a) that the *Initial Complaints* wrongly alleged that Lidia was liable under § 523(a)(2), (a)(4) and (a)(6) as co-owner of PCS, solely on information and belief, and contained no allegation she was a party to either of the governing Master Agreements, and (b) that the *First Amended Complaints* wrongly alleged (i) that Lidia and Jorge converted or embezzled property of the trust funds, (ii) that Lidia was a proprietor and operator of PCS, (iii) that Lidia had a fiduciary duty to the Boards and (iv) that Lidia exercised authority over, misapplied, diverted, commingled, failed to pay over, converted or embezzled plan assets of both of the trust funds. *Counter Motion for Sanctions* 2, 13-04015, Sept. 23, 2015, ECF No. 142. The assertions of the *Sanctions Motion* are thus different than the assertions in the motion included in the *Sanctions Notice* approximately a year and a half prior.

**2. Notice to the Cement Masons Trust**

With respect to the Cement Masons Trust Funds, the background is slightly more elongated, as the Quinoneses threatened the Cement Masons Board with a sanctions motions on four separate occasions.

**a. The First Threat: November 19, 2013**

On November 19, 2013, as the Cement Masons Board pointed out, barely a week after the Quinoneses' current counsel substituted into these matters, counsel sent the Cement Masons Board's counsel a letter accompanied by a draft motion for sanctions (together, "Notice One") on behalf of Lidia. *See Counter Motion for Sanctions* 8, 13-04016, Sept. 23, 2015, ECF No. 127. Notice One complained of the same alleged "information and belief" deficiencies in the *Initial Complaint* as were later identified with respect to the complaint in the Laborers AP.[5] *Id.* The motion sent as part of Notice One was never filed.

---

[5] And in this instance as well, the Board pointed out to the Quinoneses that they intended to amend the complaint to expand and clarify the bases for Lidia's alleged liability.

6

**b. The Second Threat: December 16, 2013**

On December 16, 2013, Lidia, by and through the Quinoneses' counsel, sent a letter to Henry Cortez, the Chairman of the Cement Masons Board, accompanied by a draft motion for sanctions (together, "Notice Two"). *See id.* at 23. Notice Two was virtually identical in form and substance to Notice One. The sanctions motion sent as part of Notice Two was never filed.

**c. The Third Threat: November 25, 2014**

On November 25, 2014, Lidia, by and through the Quinoneses' counsel, sent the Cement Masons Board's counsel a letter with an accompanying sanctions motion (together, "Notice Three"). *See id.* at 15. Notice Three argued that eighteen separate assertions against Lidia were without factual or legal support because the sole basis for Lidia's liability was her status as a co-owner of PCS or its assets, and not any alleged conduct by Lidia. The draft motion sent as part of Notice Three also pointed out that Lidia did not sign the Master Agreement. According to Lidia, this fact was of dispositive import yet was essentially ignored by the Cement Masons Board when filing both its *Initial Complaint* and *First Amended Complaint*. The sanctions motion sent as part of Notice Three was never filed.

**d. The Fourth Threat: December 16, 2014**

On December 16, 2014, Jorge, by and through the Quinoneses' counsel, sent Cement Masons Board's counsel another letter, accompanied by three separate draft sanctions motions (together, "Notice Four"). *See id.* at 30. Notice Four alleged that the Cement Masons Board had no factual or legal support for their assertions, respectively, that Jorge had (a) made a false representation relied on by the Cement Masons Board, (b) engaged in intentional or reckless conduct with respect to any property of the Cement Masons Board, or (c) converted any property of the Cement Masons Board. The three draft sanctions motions sent as part of Notice Four were also never filed.

The *Sanctions Motion* ultimately filed by the Quinoneses in the Cement Masons AP contained the same assertions as the *Sanctions Motion* filed against the Laborers Board, and added an additional assertion, by Lidia as the moving party, that both the *Initial Complaints* and

7

the *First Amended Complaints* contained allegations of fraud (§ 523(a)(2)) against Jorge, with no facts in support of the allegations.

### III.     Analysis

On September 23, 2015, Lidia filed the *Sanctions Motions* in each of the APs seeking relief under FRBP 9011, claiming that the Boards and their counsel failed to make reasonable investigations into the facts and law on which the *Initial Complaints* and the *First Amended Complaints* were based, and that the Boards filed the respective *Initial Complaints* and the *First Amended Complaints* for an improper purpose.

The Boards oppose the *Sanctions Motions* on a number of grounds. First, the Boards argue that they were never pre-served with copies of the actual *Sanctions Motions* as filed, as required by FRBP 9011(c)(1)(A). Second, the Boards argue that the *Sanctions Motions* were untimely. Third, the Boards argue that there was both factual and legal support for the claims set forth in the *Initial Complaints* and the *First Amended Complaints*. Lastly, the Board argues that the claims were not filed for an improper purpose. As explained in greater detail below, the Court agrees with every contention raised by the Boards, and must deny the *Sanctions Motions*.

**A. The Sanctions Motions are Procedurally Deficient**

An award of sanctions for a violation of FRBP 9011 or its counterpart in the FRCP, Rule 11,[6] is an exceptionally serious matter, and is reserved for those rare situations in which a claim or defense is asserted without any evidentiary support or legal basis, or for improper purposes, such as to harass or delay an opponent, or cause undue expense. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed2d 359 (1990); *see also Indah v. SEC*, 661 F.3d 914, 926 (6th Cir. 2011). It is therefore critical that a party seeking such extraordinary relief comply strictly with all of the procedural requirements for an award under Rule 11. *Radcliffe v. Rainbow Construction Co.*, 254 F.3d 772, 789 (9th Cir. 2001) (*Barber v. Miller*, 146

---

[6] For purposes of these motions FRBP 9011 and FRCP 11 are substantively identical, but each will be referred to explicitly, to the exclusion of the other, depending on context, *e.g.* when a Ninth Circuit case discussing FRCP 11 is referred to, Rule 11 will be used, and, by contrast, when the pleadings or cases discussing FRBP 9011 are being discussed, that rule will be used.

8

F.3d 707 (9th Cir. 1998)). The Sanctions Motions filed by the Quinoneses failed to meet those requirements in two significant measures.

**1. Defendants Failed to Serve the Sanctions Motions as Required By FRBP 9011**

Federal Rule of Bankruptcy Procedure 9011(c)(1)(A) requires that a request for relief thereunder be made by separate motion, and states that such motion must describe with particularity the conduct alleged to violate 9011(b). Moreover, before such a motion may be filed or presented to the Court, it must have been served on the party whose conduct is alleged to violate the rule, and such party must be given a minimum of twenty-one days to correct or withdraw the offending pleading, allegation, or denial. FRBP 9011(c)(1)(A); *see also Riddler v. City of Springfield*, 109 F.3d 288, 295 (6th Cir. 1997).

These requirements are compelled both by the language of and the policy behind FRBP 9011. The language of FRBP 9011(c)(1)(A) that refers to "the motion" and the requirement that the motion "describe the specific conduct alleged to violate Rule 11" make it clear that the motion served must be the same motion as that filed or presented to the Court. *See Indah*, 661 F.3d at 926-27. Moreover, the directive that any sanction imposed by the Court "shall be limited to what is sufficient to deter repetition of such conduct" demonstrates that this rule requires the sort of precision and consistency that can only be achieved if the form of motion served is identical to the form of motion filed and ruled upon by the Court. FRBP 9011(c)(2).

Strict enforcement of this twenty-one day "safe harbor" provision is critical to achieving the purpose of FRBP 9011, which is to prevent abuse of the legal system, and the concomitant waste of judicial and party resources, by curtailing the assertion of positions unsupported by facts or law. *U.S. ex rel. Leno v. Summit Const. Co.*, 892 F.2d 788, 791 fn. 4 (9th Cir. 1989) ("Rule 11 'provides for sanctions, not fee shifting. It is aimed at deterring, and, if necessary punishing improper conduct rather than merely compensating the prevailing party.'") (quoting Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 185 (1985)). The Court finds that the Quinoneses did not adhere to the notice requirements of FRBP 9011, in either AP.

### a. Laborers AP

The Quinoneses have *never* served a competent motion for sanctions on the Board in the Laborers AP as required by FRBP 9011. The draft of the motion the Quinoneses served in December 2013 pertained to alleged deficiencies in the *Initial Complaint* and not the *First Amended Complaint*, which was in effect when the *Sanctions Motion* was filed and served. Thus, the draft motion that was served could not have (and in fact did not) identify any alleged deficiency in the operative document, the *First Amended Complaint*. A motion under Rule 11 directed to an earlier version of a complaint cannot satisfy the safe harbor requirements with respect to a later amended complaint. *See Lawrence v. Richman Group of CT LLC,* 620 F.3d 153, 158 (2d Cir. 2010). And, since the *Sanctions Motion* was not pre-served before filing, it cannot itself satisfy the safe harbor requirements.

As may have been expected from the normal course of discovery, and consistent with concurrent statements by the Laborers Board to the Quinoneses concerning the purpose of filing the *First Amended Complaints*, the *First Amended Complaint* in the Laborers AP alleged numerous facts, not on information and belief, on which the Board based their assertions of liability against Lidia. Accordingly, to the extent that the draft motion for sanctions complained of the fact that the *Initial Complaint* alleged matters against Lidia solely on information and belief, the *Sanctions Motion*, which also relies on this alleged fault in a prior complaint in the Laborers AP, is also ineffectual.

### b. Cement Masons AP

For similar reasons, notice and service of the *Sanctions Motion* in the Cement Masons AP is also deficient. Although the Quinoneses did serve letters and draft motions on the Cement Masons Board that addressed alleged deficiencies in the *First Amended Complaint*, the *Sanctions Motion* filed is a different motion from any of the draft motions that were provided (but never filed or formally served) to the Cement Masons Board. As the Cement Masons Board correctly notes, the *Sanctions Motion* filed in the Cement Masons AP makes reference to the Board's claim for embezzlement, the effect of the Court of Appeals for the Ninth Circuit's decision in *Bos v. Board of Trustees*, 795 F.3d 1006 (9th Cir. 2015), and new arguments regarding

10

community property and potential imputation of liability.  *Counter Motion for Sanctions* 6-7, 13-04016, Sept. 23, 2015, ECF No. 127.  These substantive differences between the *Sanctions Motion* actually filed in the Cement Masons AP, which is not subject to the safe harbor provision of FRBP 9011 because it was not properly served, and the previously informally served drafts of motions that were never filed, renders the Quinoneses requests for FRBP 9011 relief ineffectual. *Indah*, 661 F.3d at 926 ("identification of the specific conduct that is allegedly sanctionable is critical to a finding of a Rule 11 violation.").

The Court is convinced that its conclusion on this point is not mere technical pettifogging.  It is precisely because the sanctions for violations of FRBP 9011 can be so severe that the procedural requirements are both stringent and mandatory**.**  *Radcliffe*, 254 F.3d at 789. The Quinoneses' failure to adhere to the service requirements is sufficient in itself to deny the *Sanctions Motions*.

**2. The Sanctions Motions Are Also Untimely**

In addition to the failure to serve the *Sanctions Motions* in the manner required by FRBP 9011, the Boards argue that the *Sanctions Motions* are untimely.  The Court agrees.

As discussed above, FRBP 9011 requires counsel to certify that papers filed with the Court are, after reasonable inquiry, warranted by existing law, have (or will have) evidentiary support, and are not being interposed for an improper purpose. *See Cooter & Gell*, 496 U.S. at 393.  The policy behind FRBP 9011 (and its FRCP counterpart) is to prevent baseless filings and to promote judicial economy.  *See id.*  Accordingly, FRBP 9011 is structured to require clear and precise notice of alleged violations, and permits counsel to avoid the harsh consequences of a violation by promptly correcting or withdrawing offensive pleadings or positions in such pleadings.  And, as also noted above, the sanctions to be imposed for FRBP 9011 violations are limited to those sufficient to deter the violative conduct.  FRBP 9011(c)(2).

For these reasons, courts have required that motions under Rule 11 be brought promptly after the identification of the allegedly wrongful conduct.  *See Islamic Shura Council of So. Cal***.** *v. F.B.I.*, 757 F.3d 870, 873 (9th Cir. 2014).  Such prompt action is necessary to achieve the prophylactic purpose of Rule 11—the prevention of wasteful litigation practices and the

11

deterring of future bad conduct.  *See Matter of Yagman*, 796 F.2d 1165, 1183 (9th Cir. 1986) (noting that "the primary purpose of sanctions, which is to deter subsequent abuses," is not served "by tolerating abuses during the course of an action and then punishing the offender after the trial is at an end.").  Where such motions are brought after the fact, they necessarily fail to promote the purpose of Rule 11, deterring wrongful and abusive litigation practices.  *Islamic Shura Council of So. Cal.*, 757 F.3d at 873.

For the same reasons, courts look with disfavor on Rule 11 motions brought at the conclusion of a matter.  Since the "cure" of an alleged Rule 11 violation is the withdrawal or correction of an improper pleading, it follows that the purpose of Rule 11 may not be achieved at the conclusion of a matter, when issues have been disposed of, and a prospective withdrawal or correction of a pleading is no longer a relevant concept.  *See Riddler*, 109 F.3d at 295 ("By virtue of the fact that under the 1993 amendments, 'a Rule 11 motion cannot be made unless there is some paper, claim, or contention that can be withdrawn.'")**.**  Further, delaying the bringing of a Rule 11 motion until the matter is actually or essentially concluded, and depending therefore on the favorable disposition of the matter, turns Rule 11 from a powerful tool for deterrence of abusive litigation practice to a mere fee shifting statute, a transformation that the language of the statute disclaims and the cases interpreting Rule 11 condemn.  *See, e.g.*, *Summit Const. Co.*, 892 F.2d at 791 fn. 4.

In these cases, the Quinoneses' delay in bringing the *Sanctions Motions* until the favorable conclusion of these APs is exactly the sort of behavior that should result in the Court denying the motions.  In the Laborers AP, the Quinoneses waited more than a year and a half after their assertion of FRBP 9011 violations to bring their *Sanctions Motion*—based upon a superseded complaint.  In the Cement Masons AP, the Quinoneses also waited over a year and a half after their first assertion of a FRBP 9011 violation, and nine months after their last invocation of FRBP 9011 to the Cement Masons Board to bring their *Sanctions Motion*.  There is no excuse for such delay; and, more fundamentally, there is no longer any conduct to be corrected.  The Quinoneses' *Sanctions Motions* must also be denied for this reason.

**3. The Sanctions Motions are Substantively Without Merit**

The *Sanctions Motions* assert that with respect to Lidia, the Boards never alleged facts sufficient to establish liability against her for any of the claims asserted under § 523(a)(2), (a)(4), or (a)(6). With respect to the Cement Masons AP, the Quinoneses also assert that the Cement Masons Board's allegations of fraud against Jorge under § 523(a)(2) were also wholly without factual support. The Quinoneses argue from these assertions that they prevailed with respect to the claims brought against them under § 523(a)(4), and would necessarily have prevailed with respect to all remaining claims had they been tried. The Boards respond that the Quinoneses only prevailed with respect to the § 523(a)(4) claim because *Bos* changed the law in the Ninth Circuit with respect to the definition of fiduciary for the purposes of § 523(a)(4), *see Bos*, 795 F.3d at 101, after these APs had been brought, and that they had good cause to bring actions against both the Quinoneses for fraud and intentional harm to property.

As observed at the outset of this discussion, sanctions for violations of FRBP 9011 are reserved for those rare situations in which a litigant asserts a thoroughly baseless claim or defense, or pursues a matter for a wholly improper purpose. *Indah*, 661 F.3d at 926. Rule 11 sanctions should not be assessed against a party merely because the party unsuccessfully asserted a claim or a defense. *See Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010) (asserting Rule 11 "must not be used as an automatic penalty against an attorney or party advocating the losing side of a dispute."); *see also Summit Const. Co.*, 892 F.2d at 791 fn. 4. As also observed above, it is incumbent upon a party seeking FRBP 9011 sanctions to bring such matters to the Court promptly after identification of the asserted violation (and after the expiration of the safe harbor notice), so that the Court can quickly determine whether a Rule 11 violation has occurred, and deter the wrongful conduct. *See Islamic Shura Council of So. Cal.*, 757 F.3d at 873; *see also Matter of Yagman*, 796 F.2d at 1183.

Because the Quinoneses have inexplicably delayed bringing the *Sanctions Motions*, the matters they assert as FRBP 9011 violations have, with one exception, never been determined. And, to the extent that the Quinoneses *First Defendants' MSJ (Cement Masons), Second*

Case: 13-04015    Doc# 162    Filed: 12/18/15    Entered: 12/19/15 17:58:49    Page 14 of 17

*Defendants' MSJ (Laborers Trust),* and *Motions to Dismiss the Amended Complaints*, each filed during the first half of 2014, were intended to serve as proxies for FRBP 9011 motions, they were, with one inconsequential exception concerning the Quinoneses' alleged withdrawal liability, wholly unsuccessful.  Furthermore, each was denied because the Quinoneses pleadings were thoroughly inadequate[7] and because the Court determined that the Boards had alleged enough of a factual background, and asserted plausible legal theories, such that the drastic remedies sought by the Quinoneses were inappropriate.[8]

The Court did grant partial Summary Judgment in favor of the Quinoneses with respect to the claims asserted under § 523(a)(4).  *Memorandum*, 13-04015, Sept. 15, 2015, ECF No. 136; *Memorandum*, 13-04016, Sept. 15, 2015, ECF No. 121.  But, as the Boards also correctly note, that determination was solely the result of the Ninth Circuit's opinion in *Bos*, 795 F.3d at 1011-12, which at a minimum clarified the law in this circuit concerning fiduciaries under § 523(a)(4), and overruled several district court opinions that had distinguished the result in *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F. 3d 1223, 1234 (9th Cir. 2000). A party should not be found in violation of Rule 11 for espousing a position that is later determined unmeritorious, but that is at least plausible as of the filing of the pleading.  *See Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987); *see also Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987); *Bradgate Assoc., Inc. v. Fellows, Read & Assoc., Inc.*, 999 F.2d 745, 752 (3d Cir. 1993); *Ario*, 618 F.3d at 297.

To the extent that the language of FRBP 9011 prohibiting the pursuit of legal claims or defenses for an "improper purpose, such as to harass or cause unnecessary delay", describes a potential violation of the rule distinct from that addressed above, there was no evidence of such

---

[7] The Quinoneses *Motions to Dismiss* were denied, in part, because they attempted to reargue issues concerning the "relation back" of claims that the Court had previously decided against the Quinoneses.  See *Order on Defendants' Motion to Dismiss the First Amended Complaint*, 13-04015, Aug. 22, 2014, ECF No. 69; *Order on Defendants' Motion to Dismiss the First Amended Complaint*, 13-04016, Aug. 22, 2014, ECF No. 63.

[8] Indeed, the Boards correctly point out that even with respect to the claims under § 523(a)(4) for which the Court granted partial summary judgment, the Court's description of the factual predicates for the relief requested, *i.e.*, that both Lidia and Jorge occupied responsible positions with respect to PCS, with Lidia handling all paperwork and payment of expenses, comported with the factual basis for the Board's claims for relief against Lidia.  *See Memorandum* 5-6, 13-04015, Sept. 15, 2015, ECF No. 136; *Memorandum* 5-6, 13-04016, Sept. 15, 2015, ECF No. 121.

14

conduct by the Boards.  In reality, these arguments were not even presented to the Court prior to oral argument at the October 19 hearing.  And while the sentiments expressed by the Quinoneses' counsel may have been heartfelt on some level, they were backed up by nothing more than counsel's giddy, but unsupported, narrative about clever wordsmithing and oppressive practices.  Suffice it to say that the Court's review of the parties conduct in these APs would not support any assertions that would come close to replicating the sort of misconduct that FRBP 9011 is designed to discourage and to punish.

In short, there is simply no substantive basis on which to assess a FRBP 9011 violation against the Boards in these APs.

### IV.  Conclusion

For all the reasons set forth above, the Quinoneses' *Counter Motions for Sanctions* are DENIED.

**End of Memorandum**

## Court Service List

Jolene Kramer
Emily P. Rich
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway #200
Alameda, CA 94501

David N. Chandler
Law Offices of David N. Chandler
1747 4th St.
Santa Rosa, CA 95404

Jorge Edgard Quinones
Lidia Delvalle Quinones
164 Belle Avenue
Pleasant Hill, CA 94523